**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ************************************** | : | PROCEEDINGS FOR |
| IN RE: | : | REORGANIZATION UNDER |
|    BERNIE'S AUDIO VIDEO | : | |
|    TV APPLIANCE CO., INC. | : | |
| | : | CHAPTER 11 |
|         DEBTOR | : | |
| | : | |
| | : | CASE NO. |
| ************************************** | | |

**EMERGENCY EX PARTE MOTION TO LIMIT SERVICE AND SHORTEN NOTICE OF HEARING ON DEBTOR'S (A) MOTION FOR ORDER AUTHORIZING DEBTOR TO HONOR PRE-PETITION CUSTOMER PROGRAMS; (B) MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION SALES AND USE TAXES; (C) MOTION TO PAY PRE-PETITION PAYROLL AND FICA, STATE, AND FEDERAL WITHHOLDING TAXES ON SUCH PAYROLL; (D) MOTION TO USE CASH COLLATERAL; AND (E) EMERGENCY MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND (B) THE CONDUCT OF STORE CLOSING OR SIMILAR THEMED SALES; (II) AUTHORIZING THE DEBTOR TO ASSUME THE AGENCY AGREEMENT; (III) AUTHORIZING BONUS PAYMENTS; (IV) GRANTING A LIEN TO THE SALES AGENT; AND (V) GRANTING RELATED RELIEF**

TO:   THE HONORABLE ALBERT S. DABROWSKI
        CHIEF UNITED STATES BANKRUPTCY JUDGE:

The above-captioned Debtor, by and through their counsel, Rogin Nassau LLC, respectfully represents:

1.      On January 14, 2010, the Debtor filed its petition seeking relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Code") with this Court, and now operates its business and property as debtor in possession pursuant to Code §§ 1107 and 1108. No official committee of secured creditors has been appointed pursuant to Code § 1102.

2.      Debtor has filed today with this Court: (1) a Motion for Order Authorizing Debtor to Honor Prepetition Customer Programs (the "Customer Program Motion"); (2) a Motion for Order Authorizing Debtor to Pay Pre-Petition Sales and Use Taxes (the "Sales Tax Motion"); (3) a Motion to Pay Pre-Petition Payroll and FICA, State and Federal Withholding Taxes on Such Payroll (the "Payroll Motion"); (4) Motion for Preliminary and Final Order Authorizing Debtor in Possession to Use Cash Collateral and Granting Adequate Protection to RBS Citizens, National Association (the "Cash Collateral Motion"); and (5) Emergency Motion of the Debtor for Interim and Final Orders: (I) Authorizing (A) The Sale of Substantially all of the Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances, and (B) the Conduct of Store Closing or Similar Themed Sales; (II) Authorizing the Debtor to Assume the Agency Agreement; (III) Authorizing Bonus Payments; (IV) Granting a Lien to the Sales Agent; and (V) Granting Related Relief (the "Sale Motion").

3.      The Debtor is a retailer of televisions, appliances, bedding, and related products in New England. In particular, the Debtor sells merchandise in 15 stores in Connecticut, Massachusetts, and Rhode Island. All of the Retail stores, as well as the Debtor's corporate headquarters, are operated under leases.

4. Prior to the Petition Date, the Debtor took significant steps to attempt to avoid the necessity of this proceeding. However, the Debtor has experienced recurring losses on operations and is no longer able to sustain itself financially. Specifically, in 2008, the Debtor lost $234,154 on $125,362,707 in sales, and in 2009, the Debtor lost $1,906,340 on $112,240,679 in sales. The losses were a result of the decreased sales volume and a reduction of margin on sales. As a result of the losses, the Debtor was in default of its obligation to its lender, RBS Citizens, N.A. (the "Lender"). In December, 2009 the Debtor engaged the services of Altman & Company, LLC ("Altman") to serve as management consultants to the Debtor to assess the financial viability of the Debtor going forward under various circumstances.

5. The Debtor, in conjunction with Altman, investigated a number of reorganization and liquidation alternatives, including reducing the number of stores and eliminating the Enfield distribution center. The Debtor also explored the sale of its business as a going concern without success.

6. After a review of its alternatives, the Debtor concluded that the best way to maximize the value of the business for the benefit of creditors was to conduct an orderly liquidation with the assistance of a professional liquidator, who would conduct the store closing sales ("Store Closing Sales") at all of the Debtor's retail locations.

7. In order to expedite the selection of a liquidator and begin the liquidation process, the Debtor interviewed liquidation agents, so as to maximize value of the assets.

8.     Based on the bid submitted by Hilco, and with the advice of Altman and with the consent of the Lender, the Debtor determined that entering into the Agency Agreement with Hilco to conduct the Store Closing Sales according to the terms of the Agency Agreement and Sale Guidelines was in its best interest and the best interest of its stakeholders.

9.     Accordingly, effective as of January 13, 2010, the Debtor enter into the Agency Agreement whereby Hilco agreed to serve as the Agent to the Debtor in connection with a liquidation sale of Debtor's assets.

10.    Accordingly, the Sale Motion seeks an Order authorizing the Debtor to, among other things, sell substantially all of its assets free and clear of liens, conduct the store closing sales, and assume the Agency Agreement with Hilco.  Failure by the Debtor to continue performing pursuant to the Agency Agreement at his point would lead only to unnecessary delay and expense that would in turn disrupt the Debtor's liquidation efforts.  Among other things, the Debtor and its advisors would be compelled to devote valuable time and effort, at considerable expense to the Debtor and its estate, to locating new agents to conduct closing sales at these stores.  In addition, during any delay in approving the Agency Agreement, the Debtor will continue to lose substantial sums.  This would inevitably result in tremendous disruption to the Debtor's operations and in all likelihood decrease the recovery to the Debtor's estate from the Store Closing Sales and otherwise cause irreparable harm to the Debtor and its estate.

11. The Customer Program Motion seeks to honor pre-petition customer programs (including honoring gift cards and customer deposits,) in the ordinary course of business and as is customary in the Debtor's industry. It is essential that Debtor be permitted to immediately honor the customer programs in accordance with its prepetition practices in order comply with applicable state law governing consumer protection and unfair trade practices.

12. To the extent that the Customer Program Motion is covered by §363(b) of the Code and Rules 6004(a) and 2002(a)(2) of the Bankruptcy Rules, the Debtor asks this Court to reduce the time period pursuant to Rule 9006(c)(1).

13. The Sales Tax Motion seeks to allow Debtor to continue to pay sales taxes to the States of Connecticut, Massachusetts, New York, and Rhode Island (the "Taxing Authorities"). In the normal course of its business, the Debtor is required to collect sales taxes (the "Sales Taxes") from purchasers of its products on a per sale basis and periodically remit the Sales Taxes to the Taxing Authorities. Typically, Sales Taxes accrue as products are sold, and such taxes are calculated as a statutory percentage of the sale price. Sales Taxes are remitted on the basis of sales tax actually collected from customers.

14. An immediate need also exists for the Debtor to use cash collateral to avoid immediate and irreparable harm to the Debtor's estate.

15. The proposed Cash Collateral Order and the related terms of the Sale Motion are the result of extensive negotiations between the Debtor and the Lender. They are designed to protect the

Debtor's customers and employees in that they provide for the honoring of customer deposits and gift cards and provide financing for the payment of pre-petition wages, sales taxes and employee health insurance.

16. Accordingly, the Debtor has an immediate need to honor customer deposits, pay sales taxes, continue to pay its employees, to use cash collateral, and conduct store closing sales in order to avoid immediate and irreparable harm to Debtor's estate.

17. Debtor hereby requests, in order to avoid immediate and irreparable harm to the Debtor's estates, an order: (1) shortening notice of each of the Customer Program Motion, the Sales Tax Motion, the Payroll Motion, the Cash Collateral Motion, and the Sale Motion so that the hearings on such matters can be held on January 15, 2010; and (2) scheduling the final hearings on the Cash Collateral Motion and the Sale Motion so that such matters can be heard on January 28, 2010.

18. Debtor hereby further requests an order limiting service of each of the Customer Program Motion, the Sales Tax Motion, the Payroll Motion, the Cash Collateral Motion, and the Sale Motion: (a) the United States Trustee; (b) the Debtor's twenty largest unsecured creditors (c) counsel to Citizens, the Debtor's secured lender; (d) counsel to Hilco; (e) the Local mayor or similar representative of each town, village, or city where a Store is located; (f) the landlords of the closing stores; (g) any parties who have filed financing statements against the Debtor; (h) the Internal Revenue Service, Special Procedures Office; (i) the State of Connecticut; (j) the State of

Massachusetts; (k) the State of Rhode Island; and (l) any party that has appeared and requested notice.

19. The reasons for the Debtor's request to limit notice of the Customer Program Motion, the Sales Tax Motion, the Payroll Motion, the Cash Collateral Motion, and the Sale Motion are as follows: (i) the Debtor has approximately 200 creditors; (ii) service to all of the Debtor's creditors would be burdensome to the Debtor's estates; and (iii) the above listed entities are those most likely to have any interest in the matters.

WHEREFORE, Debtor requests an order: (i) shortening notice of the Customer Program Motion, the Sales Tax Motion, the Payroll Motion, the Cash Collateral Motion, and the Sale Motion to overnight notice by overnight courier, express mail, email or facsimile; and (ii) limiting service of such notices to: (a) the United States Trustee; (b) the Debtor's twenty largest unsecured creditors (c) counsel to Citizens, the Debtor's secured lender; (d) counsel to Hilco; (e) the Local mayor or similar representative of each town, village, or city where a Store is located; (f) the landlords of the closing stores; (g) any parties who have filed financing statements against the Debtor; (h) the Internal Revenue Service, Special Procedures Office; (i) the State of Connecticut; (j) the Commonwealth of Massachusetts; (k) the State of Rhode Island; and (l) any party that has appeared and requested notice.

Dated at Hartford, Connecticut, this 14th day of January, 2010.

                                    Bernie's Audio Video
                                    TV Appliance Co., Inc.

                                By:____/s/ Barry S. Feigenbaum_____
                                    Barry S. Feigenbaum
                                    Fed. Bar No. ct06605
                                    Matthew T. Wax-Krell
                                    Fed Bar. No. ct26905
                                    Rogin Nassau LLC
                                    Its Attorneys